UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| SERBENNIA CHASE | : | |
| 301 G Street, S. W. | : | |
| Washington, D.C. 20024 | : | |
| | : | |
| Plaintiffs | : | |
| | : | |
| v. | : | CASE NO: |
| | : | |
| DISTRICT OF COLUMBIA | : | |
| Serve: Darlene Fields | : | |
| Office of the Attorney General | : | |
| 441 4th Street. N.W. 6th Floor South | : | |
| Washington, D.C. 20001 | : | |
| | : | |
| Serve: Diane Thaxton, Secretary | : | |
| for the District of Columbia | : | |
| 1340 Pa. Ave. N.W. | : | |
| Washington, D.C.  20001 | : | |
| | : | |
| Defendant | : | |

## COMPLAINT FOR VIOLATION OF CIVIL RIGHTS AND INVASION OF PRIVACY

Comes now the Plaintiff, Serbennia Chase, (Chase), by and through undersigned counsel, and sues the Defendant stating:

### JURISDICTION

1. This court has jurisdiction pursuant to 28 U.S.C.§§ 1346 (a)(2), 2401, 2671, and the Fourth, Fifth, and Eighth Amendments of the United States Constitution.

### PARTIES

2. Chase was, at all times relevant to this cause of action, residing in the District of Columbia.

3. The Defendant, District of Columbia, is a sovereign government operating as the District of Columbia Government, (District).  It was operating in that capacity at all times relevant to this cause of action.  District's Metropolitan Police Department, (Police), employs individuals, as police officers, to enforce the laws of the District of Columbia and the United States of America, within its geographic boundaries.  Police is under the direction and supervision of District's chief

executive, Adrian Fenty, District's duly elected Mayor.  District's police officers are employees of District; and all acts alleged herein, were been done by them within the scope of their employment as District's agents, servants, and/or employees. District's Department of Corrections employs individuals, as correctional officers, to enforce the laws of the District of Columbia, the United States of America, within its geographic boundaries, and to run and operate the District of Columbia Jail and its Correctional Treatment Facility (CTF). The acts of the District's Correctional Officers are employees of District; and all acts alleged herein, were been done by them within the scope of their employment as District's Correctional Officers to run, operate, and/or facility the operation of the District's jail and CTF and enforce the laws of the District of Columbia and the United States.

4.   The act(s) of each and every police officer(s), alleged herein, were done while acting within the scope of their employment as District's agent, servants, and/or employees and while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officer(s) while executing, carrying out, and enforcing District's laws and the laws of the United States.  It is those rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs that caused the harm alleged in this complaint, while being enforced by the District's police officers.

## **FACTS**

5.   Chase was arrested on September 8, 2008, and charged with Assault with intent to kill, while armed, aggravated assault, while armed, and with assault with significant bodily injury. She was arrested by members of District's Fifth District Police Precinct.  After being arrested, she was handcuffed, her hands were placed behind her back, and she was taken into custodial

interrogation room number 211, for interrogation, in District Fifth District Police Precinct. While in that room, her handcuffs were removed but one of her feet was shackled to the chair where she was placed to sit.

6. While in that room, Chase was interrogated by Police's Detectives: Clingerman and Parker. Their interrogation was done while working within the scope of their employment, as District's agents, servants, and/or employees, and; while enforcing a long standing policy instituted and sanctioned, by the District, that required them to videotape their entire interrogation of Chase, without stopping it, until their interrogation of her was completed. Chase was not told that she was being videotaped.

7. District admitted this fact in its opposition to Chase's motion for a temporary restraining order that was held on July 14, 2009, before the Honorable Judge Eugene Hamilton, in the District of Columbia Superior Court's Civil Division. **Attachment # 1**. The temporary restraining order was granted. **Attachment # 2**.

8. During Chase's interrogation, Detective Clingerman told her that she would have to remove the clothes she was wearing, give them to the female officer that was in the interrogation room, with him, and change into the clothing he gave her. After he removed the shackles, from Chase's leg, so she could change into the clothes he gave her, he asked her if she had any under garments on. She replied no. Detective Clingerman told her, as he was leaving the room, that he'd return after she changed her clothes. The female officer remained in the room while Chase changed clothes.

9. After Detective Clingerman left the room, the officer told Chase to take off her clothes. Chase removed her blouse and asked the officer if she had to take off her bra. The officer said no.

As Chase began to remove her pants, she told the officer she was not wearing any underwear. The officer did not say anything and Chase proceeded to remove her pants, while the videotape continued recording her. The videotape recorded Chase, as she removed her pants exposing her naked vagina and naked buttocks. Chase's naked vagina and naked buttocks were visible for approximately one minute.

10. When Chase's interrogation was completed, District's Police Department made CD copies of Chase's videotape interrogation. One was given to Assistant United States Attorney Karen A. Rich and she gave a copy of it to: Michael Madden, (Madden), Chase's then criminal attorney. Undersigned counsel received the CD, given to Attorney Madden, after Chase retained him to represent her, in her criminal case, in lieu of Attorney Madden. Undersigned counsel reviewed it, went to the jail, on June 21, 2009, and told Chase that she was being videotaped when Detectives Clingerman and Parker were questioning her, and that it shows her undressing, and that her naked buttocks and naked vagina are clearly shown on the CD, for approximately one minute. Chase was shocked, embarrassed, and felt shame, that her attorneys and other people saw her naked body.

11. Chase was held in the District's Correctional Treatment Facility (CTF) Jail located at: 1901 D Street, N.E. Washington, D.C. 20019. Her trial was set for August 4, 2009, before the Honorable Judge Bayly. While in District's jail, Chase took advantage of the programs offered there. She tried to better herself and make the best of a bad situation. She participated in the following programs:

     a. Participation in anger management classes, in the DC Life Line Program; and

     b. Participation in NA classes.

She also participated in daily group classes from: Monday-Friday, from approximately 6:00 am

4

to 5:00 pm, did not get into any fights, and she was not disciplined for violating any of the District's jail's rules.

12.    Chase was visited in the District's jail by Madden, from March 2009-June of 2009. When a prisoner is visited by their attorney, while in the District's CTF, the District's rules and regulations require that the inmate be escorted, by one of CTF's officers, to the visitor's lounge where the attorney and client may confer.   At various times, Chase was escorted to meet with Attorney, and other incidences requiring any escort, by Lt. Harris. Lt Harris, while escorting Chase, Lt. Harris did so while acting within the scope of his employment as District's agent, servant, and/or employee and while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officer(s) while executing, carrying out, and enforcing District's laws and CTF's rule(s) and regulation(s) requiring that Chase be escorted to her meeting with her attorney and other incidences that required her to be escorted.

13.    Sometime between March of 2009 and May of 2009, Lt Harris while escorting Chase, back to her cell, grabbed her buttocks, when her back was turned to him.  Chase immediately turned around with a look of surprise, shock, and amazement.  If she was not an inmate she would she would slapped his face.  She could not; and was relegated to a look of amazement and shock.  Lt. Harris stood there looking at Chase and said something like: "I'll see you later."  Chase did not give Lt. Harris any reason(s) to believe that she wanted a sexual relationship, with him, or that she welcomed him touching her intimate body parts.

14.    Chase wanted to report the incident but was afraid that Lt. Harris might retaliate and somehow use his authority to prevent her from participating in the CTF programs she was participating, put her in lock down, and, that as an inmate, no one would believe her over CTF's

staff.  She hoped that Lt. Harris would not repeat what he did or that another officer would escort her.

15.  Sometime between March of 2009 and May of 2009, Lt Harris again, for a second time, while escorting Chase, grabbed Chase's buttocks and grabbed her in vagina area. Chase was again shocked and amazed at what Lt. Harris did.  Once again, he looked at Chase, and said something like: "I'll see you later."  Chase did not give Lt. Harris any reason(s) to believe that she wanted a sexual relationship, with him, or that she welcomed his sexual advances.

16.  Chase was in emotional distress and a difficult dilemma. She did not know what to do about Lt. Harris' actions.  In addition to the stresses related to being an inmate, Chase was tormented about what to do about Lt. Harris' illicit unwelcome and unsolicited sexual advances. She could not control who escorted her, feared his retaliation, if she reported him, and she did not want Lt. Harris' illicit, unwelcome, and unsolicited sexually assaults to continue.  She hoped and prayed that someone else would escort her.

17.  Sometime between March of 2009 and May of 2009, Lt Harris again, for a third time, sexually assaulted Chase. However, this time he was bolder.  While returning Chase, from a legal visit, Lt. Harris diverted and took Chase in a some secreted back stairs.  As Chase proceeded up the stairs Lt. Harris told her not to go up the stairs. Chase stopped. Lt. Harris grabbed Chase's vagina and buttocks and said, "when are you going to let me put this dick in you".  This sexual assault might have gone further but for others coming down the steps; as a result Lt. Harris stopped his sexual assault on Chase.

18.  Lt. Harris' third sexual assault, on Chase, was even bolder. Chase was emotionally drained, shook, tormented, and afraid, of the consequences of reporting Lt. Harris. She felt that he would not stop his sexual advances. His assaults were getting bolder and she was afraid what he might do the next time.  Chase was emotionally stressed out and her torment was too great. She

could not stand it anymore. She decided that she had to report Lt. Harris and somehow deal with the repercussion and retaliation she expected to experience after reporting him.

19.   After Chase reported Lt. Harris' sexual assaults, her status, in CTF, changed immediately. She could no longer participate in the CTF programs she was participating, prior to reporting Lt. Harris' sexual assaults.  She was transferred to another more restrictive CTF, jail unit, and on July 24, 2009, she was moved to the Rappahannock Regional Jail, in Stafford, Virginia. When she arrived there, she immediately taken and placed in twenty-four (24) total lock down. She was put in a cell, where her food was slid to her through an opening, in the jail door, she was only released to take a shower, and immediately after taking a shower, Chase was escorted back to twenty-four (24) lock down. She remained in total lock down from July 24, 2009 to approximately August 5, 2009. She is, as this date, in a less than twenty-four (24) lock down but still in lock down.

20.   The Rappahannock Regional Jail is in the Commonwealth of Virginia. On a good day, without traffic, it is an hour drive, from CTF, with traffic it is approximately a two (2) hour, or more drive.  The legal visits there are restricted from 8am-8pm, Monday through Saturday and legal visits are not allowed on Sundays; where as, in CTF any attorney may visit Chase at anytime and at any hour but still considered in lock down status.

21.   Chase's transfer to the Rappahannock Regional Jail, outside of the District of Columbia, made it more difficult for legal visits, and for family and friends to visit her. The Rappahannock Regional Jail's policy on visitation for non legal visits was more restrictive than the visitation policies at CTF.

## COUNT I
## VIOLATION OF CHASE'S CONSTITUTION RIGHTS

22.   Chase incorporates, by reference, the allegations, in paragraphs 1 through 21, into this count, as fully as if pleaded herein

23.   Title 42 U.S.C. § 1983 provides:

7

"Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

It is true that Chase, while incarcerated, surrenders some of the rights she enjoyed prior to being incarcerated however, she retains her privacy rights. During Chase's interrogation, District's police officers did not find it necessary to: strip search her or search her body cavities. When a strip search is at issue, the court's balance a prisoner's constitutional rights against the institution's need(s) to limit them. Detectives Clingerman and Parker interrogated Chase for the sole and exclusive purpose(s) of obtaining information, from her, about the crime(s), for which she was arrested, and the location of the knife that she allegedly used to stab her victim. In the absence of any demonstrated institutional need, institutional exigencies, or evidentiary need(s), to videotape Chase's naked body, videotaping her naked body was unnecessarily visited upon her and done in violation of her privacy rights and her rights under the Fourth Amendment of the Constitution; to be free from forced exposure of her naked vagina and naked buttocks, when it is not necessary for some overriding institution objective; and to do so is repugnant to notions of decency and personal integrity.

24. Chase, like most people, has a special sense of privacy in their genital and involuntary exposure of them is especially demeaning and humiliating; and this sort of degradation should not have been visited upon her.

25. The Fourth Amendment to the United States Constitution reads:

> "….The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

26. The videotape of Chase's naked body was shown to member(s) of District's police force, member(s) of the Office of the United States Attorney, for the District of Columbia, Chase's former and current attorney, and unknown third parties; all in violation of her privacy rights and her rights under the Fourth Amendment of the United States Constitution's prohibition against unreasonable search and seizures.

27. As a direct and proximate cause of the actions of: Detectives Clingerman and Parker's enforcement of the District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officer(s) action(s); done while executing, and/or carrying out, the District laws and the laws of the United States, and done under the color of District law and pretense of the District, Chase's rights under the Fourth Amendment to the United States Constitution were violated and her rights to privacy were violated and violation of her rights to privacy constituted an intrusion into her seclusion, causing her naked buttock and naked vagina to be video taped and made available public for viewing, all of which Chase wanted to remain private and secluded.

28. Chase's constitutional rights would not have been violated but for enforcement of the District's long standing policy instituted and sanctioned, by the District, that required Detectives Clingerman and Parker to videotape Chase's entire interrogation, without stopping it, until Chase' interrogation was completed.

29. As a further direct result of the actions of: Detectives Clingerman and Parker, done while

enforcing the enforcement District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Chase's rights to privacy and her rights under the Fourth Amendment were violated; and she suffered emotional distress, shame, embarrassment, and disgrace.

**Wherefore, the premises considered,** Chase demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the Defendant.

## COUNT II
## INVASION OF PRIVACY

30. Chase incorporates, by reference, the allegations, in paragraphs 1 through 29 into this count, as fully as if pleaded herein

31. Title 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

It is true that Chase, while incarcerated, surrenders some of the rights she enjoyed prior to being incarcerated, however, she retains her privacy rights. During Chase's interrogation, District's police officers did not find it necessary to: strip search her or search her body cavities. When a strip search is at issue, the court's balance a prisoner's constitutional rights against the institution's need(s) to

2

limit them. Detectives Clingerman and Parker interrogated Chase for the sole and exclusive purpose(s) of obtaining information, from her, about the crime(s), for which she was arrested, and the location of the knife that she allegedly used to stab her victim. In the absence of any demonstrated institutional need, institutional exigencies, or evidentiary need(s), to videotape Chase's naked body, videotaping her naked body was unnecessarily visited upon her and done in violation of her privacy rights and her rights under the Fourth Amendment of the Constitution; to be free from forced exposure of her naked vagina and naked buttocks, when it is not necessary for some overriding institution objective; and to do so is repugnant to notions of decency and personal integrity.

32. Chase, like most people, has a special sense of privacy in their genital and involuntary exposure of them is especially demeaning and humiliating; and this sort of degradation should not have been visited upon her.

33. The Fourth Amendment to the United States Constitution reads:

> "….The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

34. The videotape of Chase's naked body was shown to member(s) of District's police force, member(s) of the Office of the United States Attorney, for the District of Columbia, Chase's former and current attorney, and unknown third parties; all in violation of her privacy rights and her rights under the Fourth Amendment of the United States Constitution's prohibition against unreasonable search and seizures.

35. As a direct and proximate cause of the actions of: Detectives Clingerman and Parker's enforcement of the District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or

3

customs, governing District's police officer(s) action(s); done while executing, and/or carrying out, the District laws and the laws of the United States, and done under the color of District law and pretense of the District, Chase's rights under the Fourth Amendment to the United States Constitution were violated and her rights to privacy were violated and violation of her rights to privacy constituted an intrusion into her seclusion, causing her naked buttock and naked vagina to be video taped and made available public for viewing, all of which Chase wanted to remain private and secluded.

36.  Chase's constitutional rights would not have been violated but for enforcement of the District's long standing policy instituted and sanctioned, by the District, that required Detectives Clingerman and Parker to videotape Chase's entire interrogation, without stopping it, until Chase' interrogation was completed.

37.  As a further direct result of the actions of: Detectives Clingerman and Parker, done while enforcing the enforcement District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Chase's rights to privacy were violated and her rights under the Fourth Amendment were also violated; and Chase suffered emotional distress, shame, embarrassment, and disgrace.

**Wherefore, the premises considered,**  Chase demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the Defendant.

### COUNT III
### VIOLATION OF CHASE'S CONSTITUTION RIGHTS

38. Chase incorporates, by reference, the allegations, in paragraphs 1 through 37 into this count, as fully as if pleaded herein.

4

39. Title 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

While it is true that Chase, while incarcerated, surrenders some of the rights she enjoyed prior to incarceration, she nevertheless retains her rights under the Eight Amendment's prohibition against Cruel and unusual punishment.

40. The Eighth Amendment to the United States Constitution reads:

"Excessive bail shall not be required, nor excessive fines imposed, nor cruel and unusual punishments inflicted."

The Eighth Amendment's Cruel and Unusual Clause guarantees Chase the constitutional right to be secure in her bodily integrity and free from sexual assaults from CTF's guards. Chase rights, under the Eighth Amendment's Cruel and Unusual Clause were violated when CTF's Lt. Harris sexually assaulted her three (3) times. Lt Harris' assaults took place, while escorting Chase. His assaults took place while Lt. Harris was acting within the scope of his employment as District's agent, servant, and/or employee and while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officer(s) while executing, carrying out, and enforcing District's laws and CTF's rule(s) and regulation(s) requiring that Chase be escorted to her meeting with her attorney and other incidences that required her to be escorted.

5

41.  Lt. Harris was employed by CTF. He was given certain responsibilities and act(s) to perform, within the scope of their employment as District's agent, servant, and/or employee; and while acting under the color and pretense of the District and its rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officer(s) while executing, carrying out, and enforcing District's laws and CTF's rule(s) and regulation(s). When he violated that trust and abused his authority, his actions nonetheless constitutes a violation of Chase constitution rights under the Eighth Amendment's prohibition against Cruel and Unusual Punishment; and a violation of Chase's rights under Title 42 U.S.C. § 1983.

42.  As a further direct result of the actions of: Lt. Harris' done while enforcing the enforcement District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Chase suffered emotional distress, shame, embarrassment, and disgrace.

**Wherefore, the premises considered,**  Chase demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the Defendant.

## COUNT IV
## VIOLATION OF CHASE'S CONSTITUTION RIGHTS

43. Chase incorporates, by reference, the allegations, in paragraphs 1 through 42 into this count, as fully as if pleaded herein.

44.  Title 42 U.S.C. § 1983 provides:

> "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the

6

Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable. For the purposes of this section, any Act of Congress applicable exclusively to the District of Columbia shall be considered to be a statute of the District of Columbia."

While it is true that Chase, while incarcerated, surrenders some of the rights she enjoyed prior to incarceration, she nevertheless retains her rights under due process rights under the Fifth Amendment.

45.  The Fifth Amendment to the United States Constitution, in pertinent, part reads:

"No person shall be held to answer for a capital or otherwise infamous crime,….nor be deprived of life, liberty, or property, without due process of law."

After Chase reported Lt. Harris' sexual assaults, her right to participate in CTF's internal programs was immediately terminated.  She was transferred to another a more restrictive jail cell in CTF, and on July 24, 2009, she was transferred to the Rappahannock Regional Jail, in Stafford, Virginia. When she arrived there, she was immediately placed in twenty-four (24) total lock down. She was put in a cell, where her food was slid to her through an opening, in the jail door, she was only released to take a shower, and immediately after taking a shower, she was escorted back to twenty-four (24) lock down. She remained in total lock down from July 24, 2009 to approximately August 5, 2009. She is, as this date, in a less than twenty-four (24) lock down but still considered in lock down status.

46.  The Rappahannock Regional Jail is in the Commonwealth of Virginia. On a good day, without traffic, it is an hour drive, from CTF, with traffic it is approximately a two (2) hour, or more drive.  The legal visits there are restricted from 8am-8pm, Monday through Saturday and legal visits are not allowed on Sundays; where as, in CTF any attorney may visit Chase at anytime and at any hour.

7

47.  Chase's transfer to the Rappahannock Regional Jail, outside of the District of Columbia, made it more difficult for legal visits, and for family and friends to visit her. The Rappahannock Regional Jail's policy on visitation for non legal visits was more restrictive than the visitation policies at CTF.

48.  While Chase, as an inmate, loses some of her constitutional rights, when she was put in twenty-four (24) lock down she became a victim a second time. Prior to reporting Lt. Harris' illicit sexual assaults, Chase participated in CTF's internal programs and was in the general prison population; and she was transferred to the Rappahannock Regional Jail, in the Commonwealth, where she was immediately placed in twenty-four (24) lock down, and where legal visits and visits from family and friends were made more difficult and in some cases visits are denied.

49.  As a further direct result of the actions of: Lt. Harris' done while enforcing the enforcement District's rule(s), regulation(s) statute(s), ordinance(s), practice(s) and/or customs, governing District's police officers, and; done while enforcing, executing, and carrying out the laws of the District of Columbia and the United States; Chase's rights to privacy were violated and her rights under the Fifth Amendment's due process clause were violated; and Chase was deprived of life, liberty and property without due process of law and suffered emotional distress.

**Wherefore, the premises considered,**  Chase demands $10 million dollars in compensatory damages and $10 million dollar, in punitive damages, against the Defendant.

**Jury Demand**

50.  Chase demands a trial by jury.

8

Respectfully submitted,


_s/s **Wendell C. Robinson**_
Wendell C. Robinson, 377091
4308 Georgia Ave. N.W.
Washington, D.C. 20011
202-223-4470

9